**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Reynaldo GARCIA, Jr., Defendant-Appellant.**

**No. 84–1275.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1985.

Decided Sept. 23, 1985.

---

**1370**

Donald B. Ayer, Nancy L. Simpson, Sacramento, Cal., for plaintiff-appellee.

Gerald Singer, Sacramento, Cal., for defendant-appellant.

Before MERRILL, TANG, and FLETCHER, Circuit Judges.

MERRILL, Circuit Judge:

Pursuant to 28 U.S.C. § 1291 (1982), Reynaldo Garcia appeals the revocation of his probation, arguing that the district court relied upon invalid evidence.

## I

On April 4, 1983, Garcia was sentenced by the United States District Court for the Eastern District of California to fifteen years in prison for violating the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d) (1982). The execution of this sentence was suspended, and the appellant was placed on probation for a period of five years. As a condition of probation, Garcia agreed to comply with all federal, state and local laws. He acknowledges that he was advised of this condition and that he fully understood it.

Garcia resettled in Missouri. On February 13, 1984, a petition for revocation of probation was filed in the Eastern District of California alleging that Garcia had violated the condition of his probation that he obey all federal, state and local laws.

The petition charged Garcia with four violations of Kansas City and Missouri ordinances, including disorderly conduct, breach of the peace, assault and willful damaging of the property of another. Garcia pleaded guilty to three of these charges. As to the fourth violation charged, the district court was not furnished with a court document indicating what disposition was made.[1] Garcia has never sought to overturn any of his Missouri convictions.

Because the Municipal Court of Kansas City is not a court of record, the district court found that no evidence existed that Garcia had been apprised of his constitutional rights and had waived them prior to pleading guilty. The district court nevertheless held that the evidence showed that Garcia had violated laws in contravention of a condition of his probation. Accordingly, appellant's probation was revoked and he was ordered committed to prison for a period of five years.

*United States v. Webster,* 492 F.2d 1048, 1051 (D.C.Cir.1974) (emphasis in original).

---

1. It is "not a ground for revocation that a probationer has merely been *charged* with a crime."

## II

This court recently held that "[t]he standard of proof required [for probation revocation] is that evidence and facts be such as reasonably to satisfy the judge that the probationer's conduct has not been as required by [his] conditions of probation. The judge may revoke probation when reasonably satisfied that a [local,] state or federal law has been violated, and conviction is not essential." *United States v. Guadarrama,* 742 F.2d 487, 489 (9th Cir. 1984) (citations omitted); *accord United States v. Carrion,* 457 F.2d 808, 809 (9th Cir.1972).[2]

■ A certified copy of a probationer's conviction in itself constitutes sufficient proof that a probationer has committed a crime in violation of the terms of his probation. *United States v. Lustig,* 555 F.2d 751, 753 (9th Cir.1977) (per curiam), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978). Here, certified copies of several Missouri convictions were introduced at the hearing to revoke appellant's probation.

■ Garcia contends that the Missouri convictions were invalid and may not, therefore, form the basis for revocation of probation, relying on *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). He argues that the requirement in *Boykin* that the record affirmatively show that a guilty plea was intelligent and voluntary was not satisfied.

The question, however, is not whether the convictions or the guilty pleas on which they were based were valid. Garcia is not being punished for commission of those offenses; he has already been punished. The question is whether he should now receive the punishment to which he was sentenced for the RICO violation.

In *United States v. Lustig,* this court held that a probationer may not collaterally attack a prior conviction in a probation revocation hearing. 555 F.2d at 753. *See also United States v. Carrion,* 457 F.2d 808, 809 (9th Cir.1972) (per curiam). Lustig's prior convictions were said to pose "issues that are ... not properly before [the court] and may not here be asserted as grounds for reversing the district court's order...." 555 F.2d at 753. The reason for this rule is that the validity of the conviction furnishing a basis to revoke probation is not itself a prerequisite to revocation. "Probation may be revoked where the judge is reasonably satisfied that a state or federal law has been violated." *Id.*

The court in *Lustig* said nothing about the situation where the invalidity of prior convictions was alleged to be facially apparent. Even assuming, however, that the guilty pleas in this case were facially invalid, the admission of the resulting convictions at a subsequent probation revocation hearing as evidence that federal or state laws had been violated was not necessarily

---

**2.** In this case, a letter from Garcia's probation officer was submitted in addition to the Missouri convictions. The letter reported the convictions and provided additional information concerning the underlying offenses.

The record indicates, however, that the district court relied only upon the convictions in revoking probation. No mention is made of the probation officer's letter in the court's memorandum decision. In *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 279 (1973), the Supreme Court held that among the minimum elements of due process required in revoking probation was "'a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole,'" *id.* at 786, 93 S.Ct. at 1761, *quoting Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). We must assume, there-

fore, that the letter was not among the evidence relied upon in revoking probation.

In probation revocation hearings, where the ultimate decision is "predictive and subjective in nature," *Black v. Romano,* —— U.S ——, 105 S.Ct. 2254, 2259, 85 L.Ed.2d 636 (1985), and the sentencing court is granted broad discretion, *United States v. Dane,* 570 F.2d 840, 843 (9th Cir.1977), *cert. denied,* 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978), the first inquiry of an appellate court should be into the admissibility and sufficiency of the evidence actually relied upon by the trier of fact. Only if that evidence is deficient should the court ascertain whether other evidence might have supported revocation and whether a remand is necessary in order for the district court to exercise its discretion upon the basis of that additional evidence.

foreclosed. As an initial matter, we note that the Federal Rules of Evidence concerned with the exclusion of hearsay and certain types of documents do not apply in probation revocation hearings. *See* Fed.R. Evid. 1101(d)(3).

We have also not been referred to any reason to believe that exclusion of the convictions as evidence in the federal courts would serve to deter the use of allegedly improper procedures by the Missouri judicial system. *Cf. United States v. Rea,* 678 F.2d 382, 388–90 (2d Cir.1982) (deterrence of future unlawful conduct held sufficient to exclude from a probation revocation hearing evidence seized by a probation officer in violation of the Fourth Amendment); *United States v. Vandemark,* 522 F.2d 1019, 1020–21 (9th Cir.1975); *United States v. Winsett,* 518 F.2d 51, 52–55 (9th Cir. 1975) (evidence obtained in violation of the Fourth Amendment is admissible in probation revocation proceedings if, at the time of the search, the law enforcement officers did not know or have reason to believe that the subject was on probation).

■ The crucial issue in this case is, therefore, whether the admission of the Missouri convictions is inconsistent with due process. Though probation revocation is not a stage of a criminal prosecution, it does result in a loss of liberty, *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973), and the probationer consequently cannot be denied due process. *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). *See Gagnon,* 411 U.S. at 781–82, 93 S.Ct. at 1759; *United States v. Dane,* 570 F.2d 840, 843 (9th Cir.1977, *cert. denied,* 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978). In defining the scope of the due process protection in revocation proceedings, the Supreme Court has insisted upon procedural guarantees sufficient

to assure that the finding of a violation will be "based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Morrissey,* 408 U.S. at 484, 92 S.Ct. at 2601. *See Gagnon,* 411 U.S. at 785, 93 S.Ct. at 1761.

The evidence constituting the basis for the revocation of probation must, therefore, be reliable.[3] The absence of evidence of the voluntary and intelligent nature of a guilty plea raises doubts that the guilty plea was intelligent and voluntary. An innocent person may be coerced into pleading guilty or be led to believe that, by pleading guilty, he will obtain more sympathetic treatment.

It is noteworthy, however, that upon the introduction of the challenged evidence of probation violations, Garcia did not seek to rebut the assertion that he had committed the acts covered by the state convictions. He does not dispute that he had a full opportunity to show that he did not violate the conditions of probation. *See Black v. Romano,* —— U.S. ——, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985).

> Instead, Garcia told the district court: When I walked out of prison ... I had dreams. I thought that things were going to turn out the way that others told me they were. The reality of it was no, they didn't. Mistakes were made along the way.... I realize that I made these mistakes. I'll pay the price if I have to.

Later, Garcia engaged in the following colloquy with the court:

> The Court: [L]ife is stressful.... I get mad ... but I don't throw tires out of windows. I don't spit on people. Do you see what I'm saying?
> The Defendant: Yes, I do.

Further, the appellant pleaded guilty to varied offenses on a number of separate

---

**3.** This emphasis upon reliability is consistent with the approach taken by the Supreme Court in disallowing the use of *uncounseled* convictions in subsequent proceedings. The crucial factor in those cases was the belief that uncounseled convictions are not reliable as evidence in subsequent proceedings. *See Lewis v. United*

*States,* 445 U.S. 55, 67, 100 S.Ct. 915, 921, 63 L.Ed.2d 198 (1980); *Loper v. Beto,* 405 U.S. 473, 483–84, 92 S.Ct. 1014, 1019, 31 L.Ed.2d 374 (1972); *see also Linkletter v. Walker,* 381 U.S. 618, 639 and n. 20, 85 S.Ct. 1731, 1743 and n. 20, 14 L.Ed.2d 601 (1965).

dates before several different judges. He was arrested by a different police officer on each occasion. The likelihood that all of the guilty pleas were unreliable is, therefore, quite low.

The circumstances of this case indicate that the Missouri convictions were reliable evidence of law violations, and, consequently, their introduction into evidence did not violate due process. The district court could reasonably have concluded that state law had been violated and did not, therefore, abuse its discretion in revoking probation. *See United States v. Guadarrama*, 742 F.2d at 489.

Judgment affirmed.