UNITED STATES of America, Plaintiff–Appellee,

v.

Charles LAUGHLIN, aka Charles William Laughlin, John Tracy Laughlin, Defendant–Appellant.

No. 89–10641.

United States Court of Appeals, Ninth Circuit.

Submitted April 1, 1991.[*]

Decided May 21, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

787

Michael W. Berdinella, Fresno, Cal., for defendant-appellant.

Mark Edelman, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

Before TANG, FARRIS and D.W. NELSON, Circuit Judges.

TANG, Circuit Judge:

## INTRODUCTION

On March 10, 1987, Charles Laughlin pleaded guilty to two counts of bank fraud. The district court sentenced him to five years' imprisonment on the first count. The court also sentenced him to a five year prison term on the second count, but expressly suspended the execution of that sentence and placed Laughlin on probation for a period of five years "to commence upon his release from prison." The court conditioned Laughlin's probationary status on his compliance with "all local, state and federal laws" and forbade him to "possess credit cards or [a] personalized checking account without the knowledge and consent of the probation officer."

On September 27, 1988, Laughlin was paroled from prison. He was assigned to live with a family and to wear an electronic monitoring device at all times.

On December 7, 1988, Laughlin was charged with violating the terms of his probation. The report charged Laughlin with forging the name of another inmate on a bank withdrawal slip. Supplemental reports also charged Laughlin with making false and fraudulent statements on a credit card application. Proceedings were initiated to have Laughlin's probation revoked.

After conducting an evidentiary hearing, the district court revoked Laughlin's probation, finding that the withdrawal slip forgery violated the condition that he obey all laws. The court offered, as a second ground for revocation, the fraudulent credit card application, which violated the prohibition against possessing credit cards.

Upon revoking his probation, the district court sentenced Laughlin to five years' imprisonment for the second count of bank fraud, directing that the sentence run concurrently with the previous bank fraud sentence.

Laughlin appeals the district court's revocation of his probation, arguing that 1) he was denied effective assistance of counsel during the revocation hearing; 2) his probation could not be revoked because the sentence had not yet commenced; 3) the government's failure to provide appropriate pre-release treatment excused his violations of probationary conditions; 4) the government's failure to inform him of conditions on his probation violated the due process clause of the fifth amendment; and 5) revocation of probation for attempted possession of credit cards was inappropriate. Because none of these arguments warrants relief, we affirm the district court's decision.

## STANDARD OF REVIEW

■ A federal district court has broad authority to revoke probation. *United States v. Daly,* 839 F.2d 598, 599 (9th Cir. 1988). Such an order will be reversed only if the court abused its discretion. *Id.*

## DISCUSSION

A. *Ineffective Assistance of Counsel*

■ Laughlin argues that his counsel's performance during the revocation hearing was so constitutionally deficient as to merit a reversal of the district court's decision and a new hearing.

■ We decline to reach the merits of this claim. As a general rule, we will not review challenges to the effectiveness of defense counsel on direct appeal. *See, e.g., United States v. Houtchens,* 926 F.2d 824, 828 (9th Cir.1991); *United States v. Birges,* 723 F.2d 666, 670 (9th Cir.), *cert. denied,* 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984). Such an issue is more appropriately reserved for habeas corpus proceedings, where facts outside the record, but necessary to the disposition of the claim, may be fully developed.

Challenge by way of a habeas corpus proceeding is preferable as it permits the defendant to develop a record as to what

counsel did, why it was done, and what, if any, prejudice resulted.

*United States v. Pope,* 841 F.2d 954, 958 (9th Cir.1988). *See also United States v. Sanclemente–Bejarano,* 861 F.2d 206, 211 (9th Cir.1988); *Birges,* 723 F.2d at 670.

■ This case aptly evidences the propriety of such a rule. The record contains little more than generalized assertions of incompetency. Former defense counsel has had no opportunity to explain his actions. Nor has Laughlin established any foundation for demonstrating that the alleged errors actually prejudiced the outcome of the hearing. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.")[1] We therefore decline to address Laughlin's claim.

### B. *Commencement of the Probationary Term*

■ Laughlin argues that he could not have violated a condition of his probation because the sentence of probation had not commenced. He suggests that his probationary term was scheduled to begin after detention terminated under the first count. Probation, in other words, would not begin until he was no longer on parole or required to wear an electronic monitoring device under the first bank fraud conviction.

This theory cannot be reconciled with the express terms of the district court's sentencing order. The court instructed that probation would begin upon Laughlin's "release from *prison,*" (emphasis added), not his release from detention or custody. Regardless of how one might characterize his subsequent custodial status, as of September 27, 1988, Laughlin was no longer in prison. When Laughlin walked out the prison door that day, the clock on his probationary term began ticking.

■ In so holding, we affirm what we implicitly acknowledged in *United States v. Carter,* 827 F.2d 546, 548 (9th Cir.1987): A defendant may simultaneously be on parole and probation. There is nothing inherently inconsistent about the two custodial formats. They constitute two separate punishments for two separate crimes. They may be served concurrently as readily as a jail term and probation can be simultaneously served.

### C. *Pre–Release Custody*

Laughlin contends that the government's failure to coordinate his release through a community treatment center violated 18 U.S.C. § 3624(c). He suggests that, because he was not appropriately reintroduced to society, he should not be held accountable for the actions taken in violation of his probation conditions. We disagree.

■ Nothing in the language of section 3624(c) mandates that all prisoners pass through a community treatment center en route to free society. Section 3624(c) requires only that:

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry into the community. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

■ Even assuming this statutory provision obliged the Bureau of Prisons to provide Laughlin some form of pre-release treatment, the Bureau's decision to release him to a family and to supervise him through an electronic monitoring device

---

1. Ineffective assistance of counsel claims will be reviewed on direct appeal only if "the defendant's legal representation was so inadequate as obviously to deny him his sixth amendment right to counsel" and "the trial court's failure to take notice sua sponte of the problem" amounted to plain error. *United States v. Wagner,* 834 F.2d 1474, 1482 (9th Cir.1987). This case does not fall within that exception.

would fall within the options available to the Bureau under this statute.

Laughlin argues that the Bureau's failure to follow section 3624(c) caused him to commit the new offenses, but offers nothing to support this speculation. Unsubstantiated conjecture will not support reinstitution of his probation. Moreover, we find no basis in the statute's text or elsewhere for holding that reinstatement of probation is the appropriate relief for this asserted violation of section 3624(c) by the Bureau of Prisons.

We likewise find meritless Laughlin's suggestion that his probation revocation hearing should have been conducted in an administrative forum. Nothing in the language of section 3624(c) even hints at an intent to strip the district courts of their authority over such matters.

### D. *Due Process*

Laughlin contends that the revocation of his probation violated his right to due process because he was not given appropriate notice of the conditions on his probation. We disagree.

First, it is important to note that Laughlin never states that he was not aware of the conditions on his probation. In fact, the district court plainly instructed him on these conditions at the time of sentencing. Rather, he objects that his probation officer failed to perform her or his duty under 18 U.S.C. § 3655 to remind him of these conditions. Section 3655, however, was repealed effective November 1, 1987—more than two years before Laughlin's probation commenced. We thus need not decide whether a violation of this statute's provision could warrant a reinstatement of probation.

Second, a court may impute notice and knowledge of conditions when their violation entails a criminal act. *United States v. Simmons*, 812 F.2d 561, 565 (9th Cir.1987). Laughlin is thus presumed to have had notice at least that his forgery activities violated probation.

Laughlin's suggestion that he might not have remembered these terms is to no avail. As a general rule, neither forgetfulness nor absentmindedness excuses violations of probation conditions.[2]

### E. *Actual Possession*

Laughlin posits, lastly, that revocation for the credit card application was inappropriate because the terms of his probation proscribed only the "possession" of credit cards.

We need not decide whether an unsuccessful attempt to violate a probation condition warrants revocation, although it is worth noting that Laughlin concedes his actions transgressed the spirit if not the letter of his sentence. Even assuming he is correct, revocation was still appropriate because of Laughlin's forgery on the bank withdrawal slip. The district court found that this violated the prohibition against breaking any local, state or federal law. This alone provided an independent and sufficient ground for the district court's decision.

### CONCLUSION

We decline to review the effectiveness of Mr. Laughlin's counsel on direct appeal. We find the rest of his contentions to be without merit. The judgment of the district court is

AFFIRMED.

---

2. We do not hold that the government's failure to remind a defendant of probation conditions could never excuse a violation. In order to prevail, however, a defendant would have to demonstrate much more compelling facts then existed here, such as the passage of a quite substantial period of time between sentencing and probation, or the imposition of more intricate, complex, or detailed probation conditions.